JEANETTE A. ALLEN, ROBERT H. KINSEY, THOMAS J. KINSEY and ROBERT H. A. ADAMS

*v.*

OLIVER M. ARKENBURGH and ELIZA J. ARKENBURGH.

[Decided November 10th, 1898. Filed June 10th, 1899.]

1. Subject to his own claims for taxes, assessments, &c., paid by him, a testator in New York held land in New Jersey in trust as to four-fifths thereof for persons residing in New Jersey, and as to one-fifth for himself. Under a testamentary power of sale, his two executors sold the land, taking a mortgage thereon as executors for part of the price. The *cestuis que trust* sued the executors in New York, both as such and individually, to compel a recognition of the trust, and the decree confirmed their liability to first satisfy testator's claims, which they did, and then to pay the balance, which they were decreed to hold in trust, one-fifth to the estate and the other four-fifths to complainants. Subsequently one executor, at the instance of the *cestuis que trust*, and in opposition to his co-executor, foreclosed the mortgage.—*Held*, that a bill filed by the *cestuis que trust* in New Jersey against the persons who were executors to enforce the New York decree in their favor, and to hold the mortgage fund within the jurisdiction of the New Jersey court, was not a suit against defendants as executors of a foreign testator, of which the court had no jurisdiction, but against them as individuals, since the claim was not against the estate of testator, and, so far as it might be considered such, had been established by the New York decree as a claim against defendants individually.

2. The suit was properly brought in New Jersey, where the executors disagreed, were constantly litigating, and had been ordered to deposit all moneys received by them as executors with a trust company in New York, from which no funds could be paid except by order of court, and the fund would thus be subject to the risk of being tied up in the trust company, and complainants subjected to expense and trouble in securing an order for its payment to them.

On demurrer of Eliza J. Arkenburgh.

*Messrs. Guild, Lum & Sommer*, for the demurrant.

*Mr. Benjamin A. Vail*, for the complainants.

PITNEY, V. C.

The four complainants are residents of New Jersey; the two defendants are residents of the State of New York. Neither of the defendants has been served with process, but each appeared separately and voluntarily.

The object of the suit is to enforce a decree rendered in favor of the complainants against the defendants by the supreme court of New York, and to fasten upon and keep within the jurisdiction of this court a sum of money which is about to be paid to the defendants, and which, by the decree of the New York court, · was declared to be held in trust by the defendants for the complainants as to four-fifths thereof. The defendant Oliver M. Arkenburgh, under whose immediate control the fund was at the filing of the bill, submitted to the jurisdiction of the court, answered the bill, admitting the complainants' equity, and the fund was paid into court, all before the defendant Eliza demurred. The payment into court was made in pursuance of an order made after hearing counsel for defendant Eliza.

The ground of the demurrer of the defendant Eliza is that the defendants are sued in a representative capacity, namely, as executors of a will proven in the State of New York, made by a testator domiciled in that state, and hence cannot be called to account in this jurisdiction.

The facts admitted by the demurrer are, that the defendants' testator, Robert H. Arkenburgh, died seized of a tract of land situate near Rahway, in this state, which he held in trust (subject to certain encumbrances for taxes, assessments, &c., paid by him), as to four-fifths thereof, for the four complainants, and as to one-fifth thereof for himself. After his death and the proof of his will in New York the defendants, who were named as executors therein, by virtue of a power of sale contained therein

sold and conveyed the land for $25,000, receiving $2,500 in cash and a mortgage for $22,500 payable, as to the principal, in annual installments of $2,500 or thereabouts, and which had several years to run. Subsequently one or two of those annual installments were paid to the defendants. After this sale the complainants claimed from defendants recognition of their rights to this fund as *cestuis que trust*, which claim was recognized by the defendant Oliver M. Arkenburgh, but was denied and contested by the defendant Eliza, and resulted in a suit in the State of New York against the defendants jointly, both as individuals and as executors, in which the rights of the complainants were established by a decree dated October 29th, 1895, as shown by a copy of the enrolled proceedings annexed to the bill, and which may be summarized as follows: That on October 21st, 1895, the defendants' testator, and they as executors, had disbursed for assessments, taxes and other expenses chargeable against the trust estate the sum of $9,115.58, and that they had received from the purchase price of the premises and interest the sum of $6,379.09, leaving due the executors representing the estate of Robert H. Arkenburgh on tne 21st of October, 1895, the sum of $2,736.49; that the defendants held, as trustees for the benefit of the complainants and the estate of Robert H. Arkenburgh, the bond and mortgage above mentioned, conditioned for the payment of the sum of $22,500, and that out of the proceeds of the amount yet to be received from said mortgage there should be paid to the estate of Robert H. Arkenburgh the sum of $2,736.49, with interest, and that all the balance should be paid by the defendants as follows: one-fifth to the estate of Robert H. Arkenburgh and one-fifth to each of the complainants.

An appeal was taken from that decree, and it was affirmed by the appellate division of the supreme court on the 25th of March, 1896.

Between the date of the original decree (October 29th, 1895) and the time of the filing of the bill herein the defendants received certain payments of principal and interest on the mortgage which, in the aggregate, overpaid the balance found due the

estate; the amount of such overpayment at the time of the filing of the bill being $1,091.33, of which sum, of course, four-fifths belonged to the complainants.

In February, 1897, the defendant Oliver M. Arkenburgh, at the instance and request of the complainants herein, but against the consent of his co-executrix, Eliza, filed a bill in this court to foreclose the mortgage, claiming it to have become due by reason of a breach of the condition of the bond in not paying taxes, with the result that on the 7th of September, 1897, a decree was made in favor of the said Oliver for the sum of $18,061.49. The case is reported as *Arkenburgh* v. *Lakeside Residence Association, 11 Dick. Ch. Rep. 102.* Eliza J. Arkenburgh was made a defendant to that suit. An appeal from that decree was taken by the defendants, which was dismissed on the 1st of March, 1898.

The complainants being in fear that the amount of the decree would be paid to the defendants and removed beyond the jurisdiction of the court, filed their bill in this cause April 6th, 1898, and obtained an order to show cause why the money should not be paid into this court, with the result above stated.

The particular objection which the complainants had to this money going beyond the jurisdiction of the court was that the defendant Oliver and the defendant Eliza had been, since the proof of the will, in constant litigation between themselves as to the administration of the estate, with the result that they are both under orders of the supreme court of New York to deposit all moneys received by them as executors with a trust company in New York, and that no payments should be made out of it by either without an order of that court. The result of this, as the complainants argue, would be that their money would be subjected to the risk of being tied up in the trust company, and they subjected to the expense and trouble of applying to the court for an order for its payment to them.

I am of the opinion that the demurrant's point that the action is against the defendants in their representative capacity as foreign executors is not well taken. The rule invoked I think has no application to this case.

The suit is not, in any proper sense, against them in their representative capacity. It is not based upon their probate of the will of Robert H. Arkenburgh. It does not seek to interfere with the execution of his will or the administration of his estate. It is not in any sense a claim against Robert H. Arkenburgh's estate, or, so far as it may in any sense be considered such a claim, it has been adjudicated upon and finally established by the decree of the courts of his domicile. In my judgment it is properly classed as a claim against the defendants individually, which has been fixed and determined by a judgment and decree of the State of New York.

I am unable to see how the estate proper of Arkenburgh—the fund of which that estate is composed—will in any sense be liable for the performance by the defendants of any decree which may be made against them herein. Should they receive the fund here in question and divert it to their own individual use, I do not see how anybody representing or having possession of the funds of the Arkenburgh estate can be compelled to make good the default. The action is a simple one to enforce a decree made by the courts of New York against the defendants as individuals and not as executors. The suit in New York was necessarily against them in a dual capacity. It, in effect, asked for an accounting with the estate of Robert H. Arkenburgh as to payments on encumbrances and receipts of principal and interest, and it prayed for a declaration of the rights of complainants in the proceeds of the sale and conveyance by the executors of the lands held in trust, which proceeds they held as individuals, for it must be observed that the naming them as executors in the bond and mortgage was a mere *descriptio personarum* and did not vary their rights. They did not hold and claim the mortgage by the force of their letters testamentary, but precisely as if they had invested so much money loaned by themselves. In order to maintain their suit for foreclosure in this court they were not obliged to establish or prove any right or title through the will of their testator, or even to name themselves as executors. The naming them as executors in the bond

Allen *v.* Arkenburgh.

and mortgage served only as an admission that they held those securities in trust, but after all did not truly disclose the trust.

The rights of the complainants do not depend on the existence or probate of any will or anything contained therein, nor upon the fact that the defendants are or have been acting in a representative capacity; nor, as we have seen, does the enforcement of those rights interfere in anywise with the administration of the testator's estate. The sole value of the circumstance of their claiming under a will was found in, and expended its force in, showing their capacity to make title to the land, in part payment of which the bond and mortgage were given.

The land which was the source of the fund was situate in this state. The bond and mortgage upon which the decree of the court in New York fastened a trust in favor of the complainants was located in this state. Its enforcement and collection was had in a court of this state, and the complainants are residents of this state. This circumstance seems to render it eminently just and right that the fund should be kept here to aid in the enforcement of the New York decree, and to save the complainants the expense of going into a foreign jurisdiction to enforce their rights, and also the additional expense which will naturally result from the disagreements between the defendants personally. The authorities show that such circumstances are always considered in determining the question whether the court will assume jurisdiction over foreign executors.

And here it is to be observed that the defendant Oliver, who has the actual custody of the bond and mortgage, and who, at the instance of the complainants as *cestuis que trust,* enforced its payment by a bill filed by himself alone against the owner of the equity of redemption and the demurrant defendant, has appeared, answered and submitted to the jurisdiction of the court.

The demurring defendant, being a non-resident, was not obliged to appear, and in the absence of a voluntary appearance no decree could have been entered against her personally. So far as she is concerned, any decree that the court could have made would have been harmless.

I think it not worth while to discuss the numerous authorities cited on each side. In addition to those, many will be found in the reported arguments of counsel in *Brownlee* v. *Lockwood and wife, 5 C. E. Gr. 239,* and in Mr. Stewart's notes to *Van Gieson* v. *Banta, 13 Stew. Eq. 14,* and in *Story Confl. L. (8th ed., by Bigelow)* §§ *512, 514 ;* and see the editor's criticism on the Massachusetts cases, in note *b* to section 514 *b,* page 731. I have examined the cases with care and find nothing to militate against, but abundant support for, the opinion at which I have arrived, namely, that the demurrer must be overruled, with the usual result. All the cases which seem to support the demurrant's position are found upon examination to vary in their circumstances from the case in hand in some essential particular, such as the enforcement of a right depending upon a trust created by a will proven in a foreign jurisdiction, or the administration of an estate held by defendants under a grant of letters testamentary, or of administration by a foreign jurisdiction, or the like.